# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | |
|---|---|
| **SIBONEY CONTRACTING CO.** | **CASE NO.  2:18-CV-01461** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **DOMINION GROUP LLC ET AL.** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 69] filed by defendants Integrity Black Lake Fleeting Service, LLC ("BLF"); Ivan Leon Johnson, Jr.; and Theresa Ann Darce Johnson. The motions relate to a suit filed by plaintiff Siboney Contracting Company ("Siboney") [doc. 1] after it was allegedly undercompensated for improvements made to the Johnsons' land. Doc. 1. BLF and the Johnsons oppose the motion. Doc. 89. The parties participated in oral argument on the matter on February 4, 2021, and the undersigned now issues this ruling.

## I.
### BACKGROUND

This suit arises from work allegedly done by Siboney for Dominion Group LLC ("Dominion"). Siboney hauled excess fill material from the Cameron LNG project near Hackberry, Louisiana, to a nearby site on the Calcasieu Intracoastal Canal owned by the Johnsons and leased by BLF, where Dominion intended to create a rock yard. Doc. 1, pp. 3–4. The development of the site took place pursuant to a Facility Use Agreement between Dominion and BLF. Doc. 81, atts. 10 & 11.

-1-

Siboney asserts that it completed its work on the project, resulting in improvements to Cameron LNG property by removing the excess fill material and to the Johnson/BLF tracts by raising the grade of land positioned along the Calcasieu Intracoastal Canal. Doc. 1, pp. 3–4. Nevertheless, it maintains, Dominion has not paid over $300,000 owed on the principal under the contract and the landowners involved have been unjustly enriched by the improvements. *Id.* at 4–6. Accordingly, Siboney filed liens against the properties under the Louisiana Private Works Act ("LPWA"), La. Rev. Stat. § 9:4801 *et seq. Id.* at 5. It then filed the instant suit against Dominion, Cameron LNG, the Johnsons, and BLF, as well as CB&I, LLC and Western Surety Company.[1] Here it raises claims of open account/unpaid invoices, breach of contract, liability under the LPWA, and unjust enrichment. *Id.* at 6–11.

The Johnsons and BLF now move for summary judgment on the claims against them (LPWA liability and unjust enrichment), arguing that (1) Siboney's lien was untimely under the LPWA, (2) the LPWA has no application to these defendants as "mere lessors" of Dominion, the true debtor, and (3) there is no claim for unjust enrichment because these parties were not enriched by the work and because Siboney has remedies available against Dominion. Doc. 69, att. 1. They have also filed a supplemental memorandum, noting that the land subject to these claims is still owned by the Johnsons but that BLF has since terminated its lease of this land and otherwise sold its operations. Doc. 80; *see* doc. 80, att.

---

[1] The latter two parties were named because they are principal and surety on a bond filed against Siboney's lien on the Cameron LNG property. Doc. 1, p. 6. Siboney noted that this bond might have had the effect of releasing its lien against the Cameron LNG property, and subsequently dismissed its claims against that party. *Id.*; doc. 10. A suggestion of bankruptcy was filed as to Dominion in September 2019, and status conference minutes from October 2020 reflect that all claims against that party have been discharged in bankruptcy. Docs. 50, 66.

1 (asset acquisition statement and bill of sale). Siboney opposes the motion on all bases. Doc. 81.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material

fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

#### A. *LPWA Claims*

##### 1. *Timeliness of Liens*

The LPWA "protects contractors, laborers, suppliers of material and others who contribute to construction projects by granting them a privilege on the immovable to secure the price of their work . . . ." *In re Whitaker Constr. Co., Inc.*, 439 F.3d 212, 216 (5th Cir. 2006). The rights created under this law "extinguish after a period of time, the length of which is defined by statute and depends on a variety of factors." *Golden Nugget Lake Charles, LLC v. W.G. Yates & Sons Constr. Co.*, 850 F.3d 231, 233 (5th Cir. 2017) (internal quotations omitted).

Under § 4822 of the LPWA a contractor must assert his lien by filing a lien statement within a certain period of time, depending on the type of claim and whether a notice of contract was filed by the parties. *Id.* Defendants argue that no notice of contract was filed and that the applicable limitation period arises from § 4822(C) under the pre-2020 version of the LPWA, which is now codified at § 4822(A).[2] Accordingly, Siboney was required to file its lien "within sixty (60) days after substantial completion of its work." Doc. 69, att. 1, p. 6; *see* doc. 82, att. 2, pp. 1–2; *see* La. Rev. Stat. § 9:4822, ed. n. (B). In its lien filings

---

[2] The amendments were passed in 2019 and are effective from January 1, 2020. *See* 2019 La. Sess. Law Serv. Act 325 (H.B. 203) (WEST).

Siboney attested that the last time it performed work on the property was June 13, 2018. *See* doc. 69, att. 2. Because it did not record its liens or otherwise preserve its rights until August 16, 2018, after 64 days had passed, defendants maintain that they are untimely.

Siboney argues that the notices of contract filed in relation to the overall Cameron LNG project, from which Dominion's soil removal work arose, apply to its own hauling work for Dominion and therefore implicate § 4822(B). *See* doc. 81, atts. 2–5 (notices of contract); doc. 81, att. 6 (Dominion/Cameron LNG contract). Accordingly, the applicable limitations period would be "(1) [t]hirty days after the filing of a notice of termination of the work" or, if no such notice is filed, "(2) [s]ix months after substantial completion or abandonment of the work[.]" La. Rev. Stat. § 9:4822(B). Siboney points out that Cameron LNG filed a notice of termination for phase one of its own project in August 2019, long after Siboney recorded its lien statement in August 2018. *See* doc. 1, atts. 1 & 2 (lien statements); doc. 81, att. 17 (notice of termination). It thus maintains that its liens were timely under § 4822(B) of the LPWA. Alternatively, it presents a declaration from a Dominion employee who attests that Dominion would have continued work at the fill site for weeks after Siboney delivered its last truckload of material – meaning that the liens are timely under § 4822(C) in the event that Cameron LNG's notices of contract and termination do not cover Siboney. *See* doc. 81, att. 11.

As defendants note, however, the LPWA – both before and after the recent amendments – requires that the notice of contract or notice of termination identify the parties, provide a legal description of the property, or "identify . . . the immovable and the work to which it relates." *See* La. Rev. Stat. §§ 9:4811, 4831. Otherwise, the notice has no

effect against third parties. *Id.* at § 4831. While a notice is not improperly filed on account of error absent a showing of actual prejudice, "the improper or insufficient description of the immovable shall be prima facie proof of actual prejudice." *Id.* at § 4811(B). Here the notices relating to the Cameron LNG project make no reference to the Johnsons' property along the Intracoastal Canal, and Siboney puts forth nothing to justify why the Johnsons or BLF should have otherwise had adequate notice of the work on their land or its completion from these notices. Accordingly, the notices of contract and termination filed as to the Cameron LNG project have no impact on the liens' timeliness.

As for substantial completion, the LPWA provides in relevant part that a work is substantially complete when "the last work is performed on, or materials are delivered to the site of the immovable . . . ."[3] La. Rev. Stat. § 9:4809(A)(1); *see, e.g.*, *Southmark Corp. v. Ellis Millwork, Inc.*, 535 So.2d 507, 509 (La. Ct. App. 2d Cir. 1988). As noted above, Siboney stated in its lien filings that it performed the last work at the site on June 13, 2018. *See* doc. 69, att. 2. It now provides a declaration from Dominion manager Trey Cline, however, who states:

> If Siboney delivered the last load of fill on June 13, 2018, to the [Johnson/BLF] site, Dominion would have continued to bulldoze the fill into position, spread, and compact it for weeks after the last truckload was dumped. The last work performed on the fill material at the site continued into July or August 2018.

Doc. 81, att. 11, p. 2 ¶ 15.

---

[3] The statute also provides that substantial completion may occur on an earlier date when the owner of the immovable accepts the work or occupies the property, as long as only minor and inconsequential work remains. La. Rev. Stat. § 9:4809(A)(1); *see Southmark Corp.*, 535 So.2d at 509–10. Neither side argues for the applicability of this section, however.

Because the LPWA affords a subcontractor like Siboney rights against a contractor like Dominion, the proper focus in determining "substantial completion" is the project as a whole. *C&S Safety Sys., Inc. v. SSEM Corp.*, 843 So.2d 447, 455 (La. Ct. App. 4th Cir. 2013). Here the fill work arose in relation to a Facility Use Agreement between BLF and Dominion, the purpose of which was to allow Dominion to develop the five-acre site owned by the Johnsons and leased by BLF, "starting with the delivery of substantial fill material to raise the elevation of the property to ensure that it was . . . accessible for future development." Doc. 81, att. 11, ¶¶ 3–4 (Cline declaration); *see* doc. 81, att. 10 (Facility Use Agreement). While Cline's declaration is speculative, it appears to reflect sufficient personal knowledge of the nature of the work to create a fact issue over whether the last work on the project was complete within 60 days of the filing of the liens. Accordingly, timeliness of the lien statements does not provide a basis for granting summary judgment on the LPWA claims.

### 2. *Applicability of Liens to Johnsons and BLF*

Defendants next argue that they are entitled to summary judgment on the LPWA claims because they were merely lessors of Dominion, the actual debtor. Under § 4802 of the LPWA, a subcontractor's right of recovery against the owner of an immovable is generally limited to (1) owners who have contracted with the contractor and (2) owners who have agreed in writing to the price and work of the contract of a lessee. La. Rev. Stat. § 9:4806. An owner under this statute includes "[a]n owner, co-owner, naked owner, owner of a predial servitude, lessee, or other person owning or having the right to the use or enjoyment of an immovable or having an interest therein." The privilege granted under §

4802 affects only the interest in the immovable enjoyed by the owner whose obligation is secured by the privilege. *Id.* at § 9:4806(C). Accordingly, a lessor's "mere consent" to the work is not enough to render him liable under the LPWA and his land subject to a privilege under that statute based on a lessee's contract. *Fruge v. Muffoletto*, 137 So.2d 336, 341 (La. 1962).

As Siboney points out, a claim may arise against the lessor/owner under the LPWA if the improvements to the land inure to his benefit. *See Lake Forest, Inc. v. Cirlot Co.*, 466 So.2d 61, 66 (La. Ct. App. 4th Cir. 1985) (citing *Fruge*, 137 So.2d at 341); *see also Cajun Constructors, Inc. v. EcoProduct Solutions, LP*, 2007 WL 9702618, at *4 (M.D. La. June 20, 2007). Defendants note, however, that *Lake Forest* involved "unusual circumstances" where the lessee had contracted for the improvements under an agreement in which it would share profits with the lessor. 466 So.2d at 65–66. The court likened the matter to a joint venture and analogized the case to *Roman v. Zuppardo*, 407 So.2d 65 (La. Ct. App. 4th Cir. 1981), where another "unusual lease" **required** the lessee to "undertake five projects of reconstruction with the consideration that the lessee would pay $300.00 less a month in rent." *Id.* at 66. Likewise, the court in *Cajun Constructors* cited *Lake Forest* and emphasized that this exception applied only to "an unusual lease, whereby the lessee conducts work on the property, and the benefit inures to the lessor/owner . . . ."[4] 2007 WL 9702618, at *4.

---

[4] The phrasing in *Cajun Constructors* is broader than that considered under the state court cases. Ass defendants note, however, the claim against the lessor in *Cajun Constructors* was considered only in the context of improper joinder raised in defendant's opposition to a motion to remand. The case was remanded to the state court, which ultimately found that there was no liability under the LPWA against the owner/lessor. *See Cajun Constructors, Inc. v. EcoProduct Sols., LP*, 182 So.3d 149, 160–61 (La. Ct. App. 1st Cir. 2015).

Siboney argues that the Facility Use Agreement represents such an "unusual lease," with its work inuring to the benefit of the Johnsons and BLF, because the fill material was deposited to raise the land and make it accessible for future development. It also argues that that BLF and the Johnsons had the right to control aspects of the project and share in its profits. To this end it points to provisions in the Facility Use Agreement between Dominion and BLF, which refer to rights of approval, a nominal toll fee payable by BLF for each ton of material transferred through the premises, and obligation to purchase certain services on a right of first refusal relating to BLF's own fleeting and towing business. *See* doc. 81, att. 10. Unlike the leases described above, however, Siboney fails to show any actual control of the project by BLF or the Johnsons, or any requirement under the lease that Dominion make these improvements. Instead, the agreement only appears to show BLF's consent to/knowledge of the improvements and an expectation that its own business interests would not be adversely impacted – in other words, standard terms for a commercial lease. Additionally, while the agreement provides that plans for site improvements will be approved at the discretion of BLF and the landowners, Siboney fails to show that BLF or the Johnsons "agreed in writing to the price and work of the contract of [Dominion]," as required to hold them liable under § 4806 as non-contracting owners. Accordingly, there is no basis for holding either the Johnsons or BLF liable under the LPWA based on Dominion's debts.

### B. Unjust Enrichment

Finally, defendants move for summary judgment on the unjust enrichment claims against them. They assert that (1) Siboney cannot maintain such a claim as long as it has

other remedies available against the actual debtor, Dominion, and (2) they did not receive any benefit, just or unjust, from Siboney's work. Siboney argues that it can plead unjust enrichment as an alternative theory to its other claims and that the defendants derived a benefit through improvements that increased the value of the immovable property.

On the subject of unjust enrichment, the Louisiana Civil Code provides: "A person who has been enriched without cause at the expense of another person is bound to compensate that person." La. Civ. Code art. 2298. The same article also emphasizes, however, that the remedy is subsidiary "and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." *Id.* Accordingly, a plaintiff must show the following to support a claim for unjust enrichment: (1) an enrichment to the defendant; (2) an impoverishment to the plaintiff; (3) a connection between the two; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) the unavailability of any other remedy at law. *Carriere v. Bank of La.*, 702 So.2d 648, 658 (La. 1996).

On the fifth element, it is the existence of another cause of action – rather than its likelihood of success or failure – that defines the availability of the remedy. *Garber v. Badon & Ranier*, 981 So.2d 92, 100 (La. Ct. App. 3d Cir. 2008). In other words, "[t]he mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff a right to recover under the theory of unjust enrichment." *Pine Grove Elec. Supply Co., Inc. v. Cat Key Constr., Inc.*, 88 So.3d 1097, 1101 (La. Ct. App. 5th Cir. 2012). Likewise, the fact that a plaintiff may ultimately prove unsuccessful in collecting on a claim against some defendants does not mean that she has no other remedy available

at law against other defendants. *Id.* (citing *Carriere*, 702 So.2d at 672). Accordingly, federal courts in this state have held that a breach of contract claim bars one for unjust enrichment and that unjust enrichment may not be maintained in the alternative.[5] *See Zaveri v. Condor Petrol. Corp.*, 27 F.Supp.3d 695, 701–02 & n. 4 (W.D. La. 2014) (collecting cases). "The Louisiana courts of appeals have also made clear that an unjust enrichment claim will not lie so long as the law provides a remedy for the enrichment against anyone, not only the defendant against whom the unjust enrichment claim is asserted." *Williams v. Chesapeake La., Inc.*, 2013 WL 951251, at *7 (W.D. La. Mar. 11, 2013); *see also Zaveri*, 27 F.Supp.3d at 700–01. Because Siboney has other available claims against the remaining defendants to this action, summary judgment should be granted to the Johnsons and BLF on the unjust enrichment claim – even if Dominion's bankruptcy protections ultimately bar Siboney from collecting against that party.

---

[5] This determination comes from *Walters v. MedSouth Record Mgmt., LLC*, 38 So.3d 245, 246 (La. 2010), where the Louisiana Supreme Court held that negligence law provided plaintiff with another remedy. Other federal district courts have read the case narrowly to bar only unjust enrichment claims pleaded alongside tort claims. *E.g.*, *PropertyOne, Inc. v. USAgencies, LLC*, 830 F.Supp.2d 170, 175 (M.D. La. 2011). Likewise, another court in this district relied on *PropertyOne* and its progeny to deny a 12(b)(6) motion targeting an unjust enrichment claim raised in the alternative to a breach of contract claim. *Oil Mop, LLC v. Chem. S. Transport, Inc.*, 2020 WL 7234644, at *4 (W.D. La. Nov. 23, 2020).  In prior decisions, however, this district and Eastern District, however, have found no reason to distinguish between tort and contract claims, and the undersigned finds no reason to depart from this persuasive authority – especially where the case is at the summary judgment stage and plaintiff is still maintaining other theories of relief, even if these might ultimately prove unsuccessful or the defendants targeted insolvent, as described in the state court case law above. *See, e.g.*, *Zaveri*, supra, 27 F.Supp.3d at 701–02 & n. 4; *Gen. Acc. Ins. Co. of Am. v. Aggreko, LLC*, 2012 WL 6738217, at *2 (W.D. La. Dec. 28, 2012); *Westbrook v. Pipe Elec. Co.*, 799 F.Supp.2d 665, 672 (E.D. La. 2011).

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 69] will be granted and all claims against BLF and the Johnsons will be dismissed with prejudice.

**THUS DONE AND SIGNED** in Chambers on this 5th day of February, 2021.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**